Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/31/2024 09:06 AM CDT

**State of Nebraska, appellee, v.
Mark A. Haas II, appellant.**
___ N.W.3d ___

Filed October 31, 2024.    No. S-23-365.

1. **Pleas: Appeal and Error.** A trial court is given discretion as to whether to accept a guilty or no contest plea, and an appellate court will overturn that decision only where there is an abuse of discretion.

2. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

3. **Courts: Trial: Mental Competency: Appeal and Error.** The question of competency to stand trial is one of fact to be determined by the court, and the means employed in resolving the question are discretionary with the court. The trial court's determination of competency will not be disturbed unless there is insufficient evidence to support the finding.

4. **Sentences: Appeal and Error.** A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court.

5. **Trial: Pleas: Mental Competency.** A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense.

6. **Trial: Mental Competency.** The competency standard includes both (1) whether the defendant has a rational as well as factual understanding of the proceedings against him or her and (2) whether the defendant has sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding.

7. **Pleas: Mental Competency.** A court is not required to make a competency determination in every case in which a defendant seeks to plead

guilty. A competency determination is necessary only when a court has reason to doubt the defendant's competence.

8. **Effectiveness of Counsel: Proof.** Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

9. ____: ____. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

10. **Effectiveness of Counsel: Proof: Words and Phrases.** To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

11. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.

12. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.

13. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.

14. **Effectiveness of Counsel: Proof: Appeal and Error.** When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.

15. **Effectiveness of Counsel: Pleas.** When a defendant enters a no contest plea, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel.

16. **Constitutional Law: Statutes: Sentences.** An ex post facto law is a law which purports to apply to events that occurred before the law's

enactment and which disadvantages a defendant by creating or enhancing penalties that did not exist when the offense was committed.

17. **Constitutional Law: Criminal Law: Limitations of Actions.** Extending a statute of limitations which has not yet run does not violate the ex post facto clauses.

18. **Effectiveness of Counsel.** Counsel is not deficient for failing to file a meritless motion.

Appeal from the District Court for Sarpy County, Stefanie A. Martinez, Judge. Affirmed.

Ann C. Addison-Wageman, of Law Office of Ann C. Addison-Wageman, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

Mark A. Haas II appeals his plea-based conviction for first degree sexual assault and his sentence of imprisonment for 40 to 50 years. Haas claims that his trial counsel was ineffective in various respects and that the district court erred when it accepted his no contest plea and abused its discretion by imposing an excessive sentence. Finding no merit to his claims, we affirm.

## I. BACKGROUND

### 1. Initial Charges

The State charged Haas by direct information with four counts of first degree sexual assault, alleged to have occurred between January 1, 2004, and June 1, 2008. Haas filed a motion to quash and to dismiss the charges, claiming that the statute of limitations had expired.

Following a hearing, the district court denied Haas' motions to quash and dismiss. In a written order, the district court found that "the statute of limitations likely ha[d] not run on the

counts charged in the Direct Information." The district court stated, however, that a preliminary hearing was necessary to ascertain the ages of the victims to make a final determination on the statute of limitations defense.

## 2. Amended Direct Information

Prior to the preliminary hearing, the State, with leave from the district court, filed an amended direct information charging Haas with the same four counts of first degree sexual assault. The amended direct information expanded the timeframe for the alleged offenses to between January 1, 2000, and June 1, 2008.

## 3. Plea Hearing

Haas and the State eventually reached a plea agreement. Pursuant to the agreement, Haas pled no contest to a second amended direct information that charged him with one count of first degree sexual assault, alleged to have occurred between January 1, 2000, and June 1, 2008.

At the plea hearing, the district court asked Haas if he understood the charge against him and understood that the charge was punishable by a maximum of 50 years in prison. Haas replied, "I do, Your Honor." The district court asked Haas whether he understood that the charge carried with it the requirement to register under Nebraska's Sex Offender Registration Act. Haas inquired how long the registration requirement would be. The district court said that it could not answer that question for him, but granted a recess so that Haas could speak with his counsel.

Following the recess, the district court asked Haas if he had an opportunity to speak with his attorney. Haas replied, "I did, yes, Your Honor." The court again asked Haas if he understood the obligation that he would have to register under the Sex Offender Registration Act if found guilty of this charge. Haas replied, "I do, Your Honor."

The district court then informed Haas of his right to an attorney, the right to a jury trial, the right to confront and

cross-examine the State's witnesses, the right to call his own witnesses, and the right to testify or to remain silent. The district court advised Haas that he was presumed innocent and that he had the right to appeal any final order of the court. The district court asked Haas if he understood all of his rights. Haas replied, "I do, Your Honor." The court then asked Haas how he intended to plead to the one count of first degree sexual assault. Haas replied, "No contest."

Before accepting his plea, the district court asked Haas about his age and education and whether he had consumed any alcohol on the day of the plea hearing. The district court also asked Haas about his mental and emotional condition and engaged in the following colloquy:

> THE COURT: Do you suffer from any mental or emotional condition?
>
> [Haas:] PTSD, Your Honor.
>
> THE COURT: Do you take medication for that?
>
> [Haas:] I do, Your Honor.
>
> THE COURT: Did you take it this morning?
>
> [Haas:] No, but it—
>
> THE COURT: When was the last time you took it?
>
> [Haas:] I had it yesterday. It's of no effect right now.
>
> THE COURT: Okay. So even taking that medication, do you believe it affects your ability to understand what's happening today or think clearly?
>
> [Haas:] No, I'll be fine without it, Your Honor.
>
> THE COURT: Okay. Then I'll find, beyond a reasonable doubt, that the defendant is alert and competent to plead.

The district court asked Haas if he understood that by virtue of his pleading no contest, if the State gave a sufficient factual basis, the court would find him guilty as if he had pled guilty. Haas replied, "I do, Your Honor." The district court asked Haas if he understood that he would lose all of his previously enumerated rights, except the right to an attorney and his right to appeal. Haas again answered, "I do, Your Honor."

The district court then confirmed with Haas that he had spoken with his attorney, discussed all possible defenses with his attorney, and was satisfied with the job of his attorney.

The district court then asked the State for a factual basis for the charges. The prosecutor stated, and described in detail, that between January 1, 2000, and June 1, 2008, Haas sexually assaulted four different victims on numerous occasions and in various ways. Haas did not object to the factual basis offered by the State. The district court found that Haas' plea and waiver of rights were made "knowingly, intelligently, and voluntarily" and that there was a factual basis to support his plea. The district court accepted Haas' plea of no contest, found him guilty of one count of first degree sexual assault, ordered a presentence investigation report (PSR), and set the matter for sentencing.

### 4. Sentencing

At the sentencing hearing, the district court stated that it had reviewed Haas' PSR and asked both parties whether they had any additions or corrections to the PSR. Haas offered additional mitigating documents to be added to his PSR. The documents, which the district court received, included a form showing Haas' honorable military discharge, as well as certificates of completion of various programs offered by the Nebraska Department of Correctional Services.

The district court sentenced Haas to 40 to 50 years' imprisonment and gave Haas credit for time already served.

Haas' trial counsel did not appeal Haas' conviction and sentence. Haas later filed a pro se motion alleging ineffective assistance of trial counsel because his trial counsel did not file a direct appeal on his behalf. The district court treated Haas' motion as a verified motion for postconviction relief and ordered an evidentiary hearing. Following the evidentiary hearing, the district court granted Haas' motion for postconviction relief and gave Haas 30 days to file a direct appeal. This is Haas' direct appeal of his conviction and sentence.

## II. ASSIGNMENTS OF ERROR

Haas assigns that the district court erred in accepting his no contest plea and abused its discretion by imposing an excessive sentence.

Haas also assigns that he received ineffective assistance of counsel insofar as his trial counsel failed to (1) challenge the amended direct information through a motion to quash; (2) divulge that a health condition impaired counsel's ability to represent Haas; (3) truthfully advise Haas of the expected outcome of his case; (4) properly advise Haas of the consequences of his plea and contend that the plea was not freely, knowingly, intelligently, and voluntarily made; (5) allow Haas the opportunity to review his PSR before his sentencing hearing and give Haas the opportunity to file a response or make necessary revisions before the sentencing hearing; and (6) submit mitigating documents on Haas' behalf before the sentencing hearing.

## III. STANDARD OF REVIEW

[1,2] A trial court is given discretion as to whether to accept a guilty or no contest plea, and an appellate court will overturn that decision only where there is an abuse of discretion. *State v. Jenkins*, 303 Neb. 676, 931 N.W.2d 851 (2019). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

[3] The question of competency to stand trial is one of fact to be determined by the court, and the means employed in resolving the question are discretionary with the court. *Id.* The trial court's determination of competency will not be disturbed unless there is insufficient evidence to support the finding. *Id.*

[4] A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Miller*, 315 Neb. 951, 2 N.W.3d 345 (2024).

## IV. ANALYSIS

### 1. ACCEPTANCE OF NO CONTEST PLEA

We begin by addressing Haas' claim that the district court erred by accepting his no contest plea. In support of this contention, Haas points to his colloquy with the district court during the plea hearing, particularly his statements that he suffered from "PTSD," or post-traumatic stress disorder, and that he had not taken his medication for that condition on the day of the plea hearing. Haas asserts he was therefore not competent to enter a plea. We are unpersuaded.

[5,6] A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense. *State v. Jenkins, supra.* The competency standard includes both (1) whether the defendant has a rational as well as factual understanding of the proceedings against him or her and (2) whether the defendant has sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding. *Id.*

[7] A court is not required to make a competency determination in every case in which a defendant seeks to plead guilty. See *State v. Vo*, 279 Neb. 964, 783 N.W.2d 416 (2010). A competency determination is necessary only when a court has reason to doubt the defendant's competence. *Id.* See, also, *Godinez v. Moran*, 509 U.S. 389, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993).

We find that the district court did not abuse its discretion by accepting Haas' plea, because it had no reason to doubt Haas' competence. Our conclusion is informed by our precedent. In *State v. Hessler*, 274 Neb. 478, 741 N.W.2d 406 (2007), a defendant who had waived his right to counsel prior to a sentencing hearing argued on appeal that the district court erred by allowing him to do so. The defendant argued that he was not competent to waive counsel and, like Haas, based his argument that he lacked competency on the fact that he had

not taken prescribed medications on the day of the hearing at issue. In determining whether the defendant was competent to waive counsel, we applied the same standards that govern whether a defendant is competent to enter a guilty or no contest plea and found that the district court did not err in allowing the defendant to waive counsel. We observed that there was no indication throughout pretrial proceedings of inability on the defendant's part to consult with counsel or understand the proceedings and that on the day the court considered his request to waive counsel, the court was "in a position to be satisfied that any medication [the defendant] was or was not on did not compromise his present competence to waive counsel." *Id.* at 509, 741 N.W.2d at 429.

Like the trial court in *Hessler*, the district court here had the benefit of observing the accused during the plea hearing. The district court also heard Haas represent that he would be "fine" without his medication. On this record, the district court did not have a reason to doubt Haas' competence and did not err by finding that his plea was made knowingly, voluntarily, and intelligently.

## 2. Ineffective Assistance of Counsel

Haas, represented by new counsel on direct appeal, also asserts that his trial counsel was ineffective in various respects. Before addressing Haas' ineffective assistance of counsel claims, we briefly review the well-established law governing such claims and their resolution on direct appeal.

[8-10] Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill

in criminal law. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*.

[11,12] When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Miller*, 315 Neb. 951, 2 N.W.3d 345 (2024). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Mrza, supra*. The determining factor is whether the record is sufficient to adequately review the question. *Id.*

[13,14] An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018). When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Miller, supra.*

### (a) Motion to Quash

[15] Haas first argues that his trial counsel was ineffective because he failed to file a motion to quash the amended direct information. Before addressing this argument, we note that Haas entered a no contest plea to the second amended direct information. When a defendant enters a no contest plea, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of

ineffective assistance of counsel. See *State v. Thomas*, 311 Neb. 989, 977 N.W.2d 258 (2022). Haas appears to take the position that his counsel's failure to file a motion to quash in response to the amended direct information caused him to ultimately enter his no contest plea in response to the second amended direct information. It is not obvious to us that Haas is correct in this respect, but it is not necessary for us to determine whether Haas waived this ineffective assistance of counsel claim by entering his no contest plea. As we will explain, even assuming Haas could assert this claim of ineffective assistance, the record establishes that trial counsel was not deficient.

Haas offers a number of reasons why his counsel should have filed a motion to quash. He refers to the approximately 8-year timeframe in which the amended direct information alleged that Haas committed various sexual assaults. He also mentions the statute of limitations, the constitutional prohibition on ex post facto laws, and the fact that he had not reached the age of majority for a portion of the timeframe charged in the amended direct information. Having considered these reasons, however, we find no basis to conclude that a motion to quash would have been successful.

Haas has not shown that a motion to quash would have been successful based on the absence of a specific date for the alleged offenses in the amended direct information. We have said that where an information provides a timeframe which has a distinct beginning and an equally clear end within which the crimes are alleged to have been committed, it is sufficient to satisfy the requirements of the Sixth Amendment. See *State v. Martinez* 250 Neb. 597, 550 N.W.2d 655 (1996). Therefore, a motion to quash that relied on the amended direct information's use of a timeframe alone would not have been successful.

Haas fares no better with his suggestion that a motion to quash based on the statute of limitations would have been successful. The State's amended direct information charged Haas with four counts of first degree sexual assault, in

violation of Neb. Rev. Stat. § 28-319(1)(a) and (b) (Reissue 2016), and alleged that the assaults occurred between January 1, 2000, and June 1, 2008. In 2000, the earliest date alleged in the amended direct information, the statute of limitations for first degree sexual assault was 7 years from the date of the offense, or 7 years from the date the victim turned 16 years of age, whichever was later. See Neb. Rev. Stat. § 29-110(2) (Reissue 1995).

In 2004, however, § 29-110 was amended to eliminate any statute of limitations for first degree sexual assault when the victim was under 16 years of age at the time of the offense. See 2004 Neb. Laws, L.B. 943, § 8 (codified at § 29-110 (Cum. Supp. 2004)). Then, in 2005, the Legislature amended § 29-110 (Supp. 2005) again to provide that "[t]here shall not be any time limitations for prosecution or punishment for . . . sexual assault in the first or second degree under section 28-319[.]" See 2005 Neb. Laws, L.B. 713, § 2 (codified at § 29-110(5) (Supp. 2005)). The 2005 amendments also included a provision that stated, "The changes made to this section by [this legislative bill] shall apply to offenses committed prior to [the effective date of this act] for which the statute of limitations has not expired as of such date and to offenses committed on or after such date." See 2005 Neb. Laws, L.B. 713, § 2 (codified at § 29-110(11) (Supp. 2005)).

As a result of the elimination of the statute of limitations for first degree sexual assault, Haas could not have shown that the charges in the amended direct information were barred by the statute of limitations. The earliest alleged date in the amended direct information was January 1, 2000. Even assuming the statute of limitations began running on that date, the charges would not have been barred. In that scenario, the 7-year statute of limitations would have expired on January 1, 2007, if not for its elimination. But, as we have discussed, the Legislature did eliminate the statute of limitations for first degree sexual assault before that date. There was thus no statute of limitations upon which Haas could have successfully moved to quash.

[16,17] This leads to Haas' invocation of the constitutional prohibition against ex post facto laws. Here, Haas appears to suggest that the Legislature's elimination of the statute of limitations violates ex post facto principles. An ex post facto law is a law which purports to apply to events that occurred before the law's enactment and which disadvantages a defendant by creating or enhancing penalties that did not exist when the offense was committed. *State v. Jenkins*, 303 Neb. 676, 931 N.W.2d 851 (2019). We have said, however, that extending a statute of limitations which has not yet run does not violate the ex post facto clauses. See *State v. Hirsch*, 245 Neb. 31, 511 N.W.2d 69 (1994) (collecting cases). As we have already explained, even if it is assumed that the statute of limitations began running on the earliest date alleged in the amended direct information, it would not have expired prior to the Legislature's elimination of that statute of limitations. A motion to quash based on an alleged ex post facto violation would have been meritless.

Lastly, Haas asserts that his counsel was ineffective for failing to file a motion to quash asserting that he was a juvenile during a portion of the timeframe alleged in the amended direct information. But the fact that the timeframe alleged in the amended direct information included time in which Haas was a juvenile would not have been the basis for a meritorious motion to quash. We have said that the mere fact that the defendant was a juvenile at the time he or she committed the offenses does not in itself give the defendant the right to be tried as a juvenile. See *State v. Pauly*, 311 Neb. 418, 972 N.W.2d 907 (2022). Instead, we have specified that the relevant date for whether someone is a "juvenile," for purposes of juvenile court jurisdiction, is when the person is originally charged for an offense, whether that person is charged by complaint in the county court, by information in the district court, or by petition in the juvenile court. See *State v. Aldana Cardenas*, 314 Neb. 544, 990 N.W.2d 915 (2023). The juvenile court has jurisdiction over any individual adjudged

to be within the provisions of Neb. Rev. Stat. § 43-247 (Reissue 2016) until that person turns 19 years of age. *Aldana Cardenas, supra*. In this case, Haas was well past 19 years of age when charges were initially filed in this case. A motion to quash based on his age at the time of the alleged offenses would not have been successful.

[18] Because Haas has not shown that a motion to quash would have been successful, we cannot find that his trial counsel was deficient. Counsel is not deficient for failing to file a meritless motion. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). This assignment of error is without merit.

### (b) Divulging Health Conditions

Haas next assigns that his trial counsel was ineffective because his counsel "failed to divulge that [counsel's] health condition(s) impaired [counsel's] ability to represent [Haas] through the strenuous pretrial proceedings and at trial." We find that this assignment of ineffective assistance of trial counsel does not comply with our specificity requirement set forth in *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). The rule announced in *Mrza* states that "assignments of error on direct appeal regarding ineffective assistance of trial counsel must specially allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity." *Id.* at 935, 926 N.W.2d at 86. A general assignment of ineffective assistance that does not specify counsel's deficiency is insufficient to raise the claim on direct appeal. See, e.g., *State v. Archie*, 305 Neb. 835, 943 N.W.2d 252 (2020); *State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020) (assignment of error generally alleging ineffective assistance insufficient to raise claim); *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019) (assignment of error alleging failure to engage in pretrial litigation does not satisfy *Mrza* rule).

In *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018), the defendant assigned that trial counsel was ineffective for failing to investigate potential witnesses or alibis. The defendant,

however, did not identify in the assignment of error any specific potential witnesses or alibis. In *Golyar*, we found that the allegations were insufficient to raise the ineffective assistance claim, because a potential postconviction court would not be able to determine if a particular claim of failure to call a witness or failure to pursue an alibi was the same one raised on direct appeal. See, also, *State v. Thomas*, 311 Neb. 989, 977 N.W.2d 258 (2022).

Likewise, in *State v. Archie, supra*, the defendant assigned generally that he received ineffective assistance of counsel in violation of his constitutional rights but did not assign specifically *how* his counsel was deficient. In that case, the defendant contended that the specific instances of deficient performance could be discerned from the argument section of his initial brief. *Id.* Citing *State v. Mrza, supra*, we declined the defendant's invitation to scour the argument section of the defendant's brief for the specific allegations of deficient performance.

Haas' assignment of error similarly lacks the requisite specificity. Haas does not identify in his assignment of error how the unspecified health condition made his counsel ineffective. We find this assignment of error to be akin to a general assertion that his trial counsel was ineffective. Haas' claim under this assignment of error does not satisfy *Mrza* and will not be addressed on appeal.

### (c) Expected Outcome

Haas next assigns that his trial counsel was ineffective because his counsel "failed to truthfully advise [him] of the expected outcome of his case when advising [him] to plead rather than exercising his right to trial, contrary to [his] intent that he expressed to counsel." The record before us contains no evidence of communications between Haas and his counsel regarding an advisement to plead, or Haas' expressed desire to the contrary. Therefore, we cannot determine whether his counsel provided deficient performance or whether Haas was

prejudiced by the alleged advisement. We find that the record is insufficient to resolve this claim on direct appeal.

### (d) Consequences of Plea
### and Allowance of Plea

Haas next assigns that his trial counsel was ineffective because his counsel "failed to properly advise [him] of his rights, [his] waiver of rights, and both the direct and indirect consequences of his plea of no contest" and "deficiently allowed the District Court to accept [his] plea that was not freely, knowingly, intelligently, and voluntarily made." We find that the record refutes this assertion of ineffective assistance of counsel.

The record demonstrates that Haas understood the consequences of pleading no contest. First, at the plea hearing, the district court explained the charges against him, the maximum penalty of the charged offense, and his obligation, if found guilty, to register under Nebraska's Sex Offender Registration Act. The district court also enumerated each of Haas' rights that would be waived by a plea of no contest. Haas indicated that he understood each of the district court's advisements. Haas' colloquy with the district court at the plea hearing thus demonstrates that Haas was aware of the direct and indirect consequences of pleading no contest.

Furthermore, as we explained earlier in the opinion, there was no basis in the record to question Haas' competence to plead. Because there was no basis in the record to question Haas' competence to plead, there is likewise no basis to find Haas' counsel was ineffective for failing to object to the district court's acceptance of his plea on grounds of incompetence.

### (e) Review of PSR

Haas next assigns that his trial counsel was ineffective because his counsel "failed to allow [Haas] the opportunity to review his [PSR] before his sentencing hearing and . . . give [him] the opportunity to file a response or make necessary revisions and/or additions before the sentencing hearing." A

defendant has a qualified right to review his or her PSR, and the defendant may, with his or her attorney, examine the PSR subject to the court's supervision. See *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

In *State v. Blaha, supra*, the question before us was whether the defendant's trial counsel was deficient for failing to disclose the contents of the PSR to the defendant prior to sentencing. In that case, we found the record was insufficient to address the claim on direct appeal, because the record was "void of any statement by [the defendant] or trial counsel that [the defendant] either reviewed the [PSR] or wished to review [it]." *Id.* at 428, 929 N.W.2d at 505.

We reach the same conclusion here. Although Haas alleges that his counsel did not review or discuss the contents of the PSR with him, the record before us contains no evidence of the communications between Haas and his trial counsel regarding the PSR. We therefore conclude that the record on direct appeal is insufficient to address this claim.

### (f) Mitigating Documents

Lastly, Haas assigns that his counsel was ineffective for failing to submit mitigating documents before the sentencing hearing. We conclude that the record refutes Haas' claim.

Haas' counsel offered mitigating documents at the sentencing hearing, and the district court received the documents prior to sentencing him. The district court expressly stated in its judgment and sentence that it had "considered the information presented in the [PSR] as well as any further documents presented by the parties and received by the Court for purposes of sentencing." Because the district court received and considered Haas' mitigating documents, he cannot show prejudice. This claim of ineffective assistance of counsel is refuted by the record.

### 3. Excessive Sentence

Haas' final assignment of error is that the district court imposed an excessive sentence. Haas concedes that his sentence

was within statutory limits but argues that the district court nonetheless abused its discretion in sentencing him. In support of his claim, Haas argues (1) that the district court did not set forth an analysis of how it weighed the relevant sentencing factors, or explain the conclusions it reached, and (2) that his case is distinguishable from *State v. McTizic*, 31 Neb. App. 675, 988 N.W.2d 197 (2023).

Haas is correct that the district court did not explain how it weighed each of the relevant sentencing factors, but we have rejected the notion that a sentencing court does not adequately consider sentencing factors when it does not discuss each one of them during the sentencing hearing. See *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

Haas also argues that his case is distinguishable from *State v. McTizic, supra*. In *McTizic*, the Nebraska Court of Appeals found that the sentencing court did not abuse its discretion when it sentenced the defendant to imprisonment for an aggregate of 40 to 50 years after convictions of first degree sexual assault and attempted first degree sexual assault. But the fact that the Court of Appeals found no abuse of discretion in *McTizic* says little about whether the district court abused its discretion here. To the extent Haas argues that the district court abused its discretion by not properly tailoring its sentence to Haas or that it should have weighed the relevant sentencing factors differently, we reiterate that it is not the function of an appellate court to conduct a de novo review of the record to determine what sentence we would have imposed. See, e.g., *State v. Horne*, 315 Neb. 766, 1 N.W.3d 457 (2024); *State v. Pauly*, 311 Neb. 418, 972 N.W.2d 907 (2022).

Based on our review of the record and the relevant considerations, we conclude that the district court did not abuse its discretion in sentencing Haas.

## V. CONCLUSION

We find no error and affirm.

Affirmed.